UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------ x
:
:
IN THE MATTER OF THE APPLICATION OF :
WP COMPANY LLC d/b/a THE : Misc. Action No. 16-mc-000351
WASHINGTON POST FOR ACCESS TO :
CERTAIN SEALED COURT RECORDS :
:
:
:
------------------------------------------------------------ x

## SUPPLEMENTAL SUBMISSION IN FURTHER SUPPORT OF
## MOTION FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS

WP Company LLC d/b/a The Washington Post (the "Post"), by and through its undersigned counsel, submits this supplemental memorandum in further support of its motion for public access to certain sealed court records (the "Motion").[1] The Post also requests that it be granted some limited access to the Government's *ex parte* filings in this case, or, in the alternative, requests a conference with the Court to discuss potential ways to provide the Post with the opportunity to respond to arguments against disclosure of the materials that the Post seeks that the Government has raised (or will raise) in its original response, its most recent "Supplemental" submission, or any further (presumably sealed) submissions.

Because the majority of filings in this case have been under seal (and are not accessible to the Post), the Post does not know precisely what the current posture of the case is, even after the Court's partial grant of the Post's Motion. What the Post does know is that the Government stated in filings in the related criminal case against Jeffrey E. Thompson that its most recent submissions in this case will introduce new "matters" to be "resolved," which "may impact the content of the parties' memorandums in aid of sentencing and their respective allocutions at the

---

[1] Unless otherwise noted herein, capitalized terms bear the same definitions as in the Post's papers filed in support of the Motion.

1

sentencing hearing." Government's Consent Motion to Extend the Time to File the Parties' Memorandums in Aid of Sentencing and to Continue the Sentencing Hearing, *United States v. Thompson*, No. 1:14-cr-049 (CKK) (May 26, 2016) (ECF No. 54) (the "Adjournment Motion"), at 3. Acccordingly, the Post submits this supplemental filing to make clear its continued interest in the full body of documents sought in the original Motion and to seek the opportunity to respond to any further arguments the Government raises in its new submissions.

Since the Post first filed its Motion, further details about the Election Investigations and investigations into Jeffrey E. Thompson in particular have come to light, aided significantly by the disclosure (albeit only in part) of the Warrant Materials pursuant to this Court's order of April 1, 2016. ECF No. 10 (the "Order"). The revelation of this new information underscores the need for public access to additional materials encompassed within the Post's original request for access, but which continue to remain under seal. In particular, the Post's original Motion was intended to encompass warrant materials related to ancillary investigations of Mr. Thompson that, as reported by the Post in April 2016, materially affected the progress and outcome of the Election Investigations. That these materials affected the Elections Investigation would appear to be corroborated by the Government's recent filings addressing use of the currently-sealed materials in the upcoming sentencing of Mr. Thompson. The new filings also suggest that the status of those ancillary investigations may have changed. The public interest in these documents is exceedingly high (for the reasons outlined in the Post's Motion) and outweighs any countervailing government interests in secrecy at this stage.

At a minimum, the Post requests a limited unsealing of the Government's submissions and/or this Court's orders so that the Post may more fully address the arguments that the Government is making in response to the Post's Motion and in its subsequent filings.

Alternately, the Post requests a conference with the Court to discuss other potential methods of limited disclosure of the Government's positions so that the Post can adequately continue to assert its (and the public's) interests and in this case.

## I. BACKGROUND

### A. Procedural Background

On February 22, 2016, the Post filed the Motion requesting an order unsealing certain sealed court records relating to search warrants issued in connection with the investigations by the United States Attorney's Office for the District of Columbia (the "USAO") into campaign finance corruption during the 2010 election of Vincent C. Gray as mayor of the District of Columbia, and related investigations into Mayor Gray, Jeffrey E. Thompson and Eugenia C. Harris (the "Warrant Materials").

On March 24, 2016, the Government filed under seal and *ex parte* a response to the Motion. *See* ECF No. 7 (the "Response"). At the time, the Post was unable to see any portion of the Government's Response (or the submissions in support of filing the Response under seal), and was therefore unable to file a reply brief or otherwise respond to the counter-arguments that the Government presumably raised in its papers.

On April 1, 2016, the Court granted in part and denied in part the Motion. *See* Order. The Court agreed that the Post had a qualified right to access the Warrant Materials under the First Amendment, and that "any remaining law enforcement and privacy interests implicated by the public disclosure of the relevant warrant materials is insufficient to justify these warrants under seal entirely." *Id.* at 3. Accordingly, the Court ordered the Government to file proposed redactions to the Warrant Materials contained in eighteen miscellaneous docket numbers. *Id.* at 5.

The Government filed proposed redacted versions of the documents on April 8, 2016. *See* ECF No. 14. The Court issued an order stating that further redactions were necessary in four of the ninety documents being unsealed. (The necessary additional redactions were set forth in an attachment that was filed under seal.) *See* ECF Nos. 16 & 17.

On April 15, 2016, the Government made public the redacted versions of the Warrant Materials that had been ordered to be disclosed by the Court. *See* ECF No. 18. The Post promptly published a thorough news story on the contents of the released materials and the light it shed on the Election Investigations, as well as its implications for the then-upcoming City Council election in which former mayor Vincent C. Gray was running. *See* Mike DeBonis, Ann E. Marimow, & Spencer S. Hsu, *Court unseals investigative file from ex-D.C. mayor Gray campaign probe*, Wash. Post (Apr. 15, 2016), *available at* http://wpo.st/2OVe1.

On May 10, 2016, the Government made a motion to partially unseal its response to the Motion, and, after the Court granted the motion, the Government filed a heavily redacted version of its Response. ECF Nos. 20-22.

**B.  The Related Thompson Investigation**

The day before the Government released the Warrant Materials pursuant to this Court's order, the Post published an extensive story based on conversations with (and documents obtained from) confidential and on-the-record sources about aspects of the investigation of Thompson that apparently contributed to the Government's decision not to bring charges against Mayor Gray (which would have rested heavily on Thompson's credibility). *See* Ann E. Marimow, *Case against ex-D.C. mayor Gray stalled over claims key witness had credibility issue*, Wash. Post (Apr. 14, 2016), *available at* http://wpo.st/2JYe1 (the "April 14 Article"). In particular, sources revealed that:

4

>Investigators last year began asking questions about the ages of Thompson's sexual partners to determine whether he had committed a crime, according to witnesses who spoke to federal agents and The Washington Post. Prosecutors also conducted interviews about money and gifts Thompson gave young men, and about whether he did so to hide sexual relationships, the witnesses told The Post. … Federal agents had not concluded that any of them were underage, [a] former law enforcement official said.

*Id.* at 1-2. The Post further reported that "the investigation of Thompson sidetracked the [Election Investigation] for months as prosecutors debated how to proceed, and as they interviewed new witnesses and reinterviewed others in Atlanta, Los Angeles and New York as well as the District, according to people questioned by federal agents and lawyers close to the case." *Id.* at 2. At least one source "familiar with the [U.S. Attorney's] office's thinking," stated that "[t]he findings of the Thompson investigation would have a bearing on the ultimate decision about whether to indict Gray." *Id.* at 3.

The Warrant Materials disclosed by the Government pursuant to this Court's orders did not include any materials related to the investigation of Thompson reported on in the April 14 Article (the "Thompson Investigation"), though that investigation was plainly critical to the progress and outcome of the Election Investigation.

**C.     Adjournment of the Thompson Sentencing and the Government's Newest Filing**

On May 27, 2016, the Government filed a motion in the pending criminal case against Thompson, for which sentencing was scheduled for June 10, 2016, seeking a 60-day adjournment of the sentencing (and associated deadlines). *See* Adjournment Motion. The Adjournment Motion made reference to the instant proceedings, explaining that the Government intended to "make an additional filing in the Washington Post Matter" under seal and *ex parte*. The Government explained further that "[r]esolution of the government's additional filing may impact the content of the parties' memorandums in aid of sentencing and their respective

5

allocutions at the sentencing hearing." Adjournment Motion at 3.[2] The court granted the Government's motion and adjourned the Thompson sentencing to August 12, 2016.

On June 3, 2016, the Government filed under seal and *ex parte* a Supplemental Response to the Post's Motion, along with a motion for leave to file under seal. ECF Nos. 23-24. To date, the Post has not seen any portion of this "Supplemental Response," nor does the Post have any way of knowing what "matters addressed" by the filing" are going to be "resolved" in this Court. Adjournment Motion at 3. On June 6, 2016, this Court issued an order under seal. ECF No. 25. The Post does not have access to this Order, but assumes that the Order simply granted the Government leave to file its Supplemental Response under seal and *ex parte*, because later that same day, the Government did so. ECF No. 26.

## II. THE POST CONTINUES TO SEEK ALL WARRANT MATERIALS FROM THE ELECTION INVESTIGATIONS, AS WELL AS ANY RELATED INVESTIGATIONS

The Post has (with the exception of the redacted Response) not seen the Government's filings in this case, it has no way of knowing what the Government's position is on the disclosure of additional warrant materials, including materials related to the Thompson Investigation. The Post does not know if the Government contends that the investigation remains ongoing, and that therefore the First Amendment right of access does not attach to the documents and that the

---

[2] Courts hold that there is a public right of access under the First Amendment and/or common law to materials submitted in advance of sentencing (other than the probation department's pre-sentence report). *See In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) ("[T]he First Amendment right of access applies to documents filed in connection with … sentencing hearings in criminal cases, as well as to the hearings themselves."); *see also United States v. Kravetz*, 706 F.3d 47, 56-58 (1st Cir. 2013) (expressing "little doubt" that sentencing memoranda were "judicial records" subject to common law presumption of access); *United States v. Chang*, 47 F. App'x 119, 122 (3d Cir. 2002) (holding that it is "beyond question" that pre-sentence letter detailing cooperation and seeking downward departure was "judicial document" subject to common law right of access); *United States v. Munir*, 953 F. Supp. 2d 470, 477 (E.D.N.Y. 2013) (applying standard under qualified First Amendment right to question of access to defendant's sentencing memorandum and letters of support from third parties).

common law right of access is overcome; that warrant materials related to the Thompson Investigation simply fall outside the scope of the materials the Post originally sought; or that other interests (such as confidentiality of informants or personal privacy) mandate sealing.

For its part, the Court appears to have based its decision to order release of the Warrant Materials on the premise that the Post's original application "s[ought] only warrant materials related to the now-closed Campaign Finance Investigations." Order at 3 n.2. And much of the Post's argument in favor of disclosure of the Warrant Materials turned on the assumption that the investigations were concluded, in light of the USAO's press release announcing the end of the Election Investigations. However, the Post's original Motion sought not only Warrant Materials "issued in connection" with the Election Investigations, but also those issued in connection with "*related investigations into Mayor Gray, Jeffrey E. Thompson and Eugenia C. Harris.*" Motion at 1 (emphasis added). Although the Post did not know the full scope of these "related investigations" (including the Thompson Investigation), or whether those investigations were formally concluded along with the Election Investigations, the Post continues to seek access to those materials.

To the extent the Government would oppose disclosure of those additional warrant materials under the premise that the investigations are not technically closed, the open nature of an investigation does not automatically preclude public access to warrant materials. Although only the Eighth Circuit has expressly held that the First Amendment right of access applies to warrant materials while an investigation remains ongoing, *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988), and courts have held that the right of access is particularly strong where an investigation has *concluded* (*see, e.g., In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 88 (D.D.C.

2008)), neither the D.C. District Court nor the D.C. Circuit has held that the common law right of access does not apply if an investigation is in any way ongoing. On the contrary, the status of the investigation is simply one factor to be weighed in the court's discretionary determination whether the common law right of access mandates disclosure of particular records. *See id.* at 92-93 (applying factors set forth in *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1981), and considering fact that investigation was complete as a factor weighing in favor of disclosure).

Thus, in *In re Search Warrant*, No. 00-138M-01 (JMF), 2000 WL 1196237, at *1 (D.D.C. July 24, 2000), Judge Facciola ordered partial disclosure of search warrant affidavits, even though the target of the search warrants had not yet been indicted. *See id.* ("To say that affidavits in support of search warrant[s] are exempt from public access solely because they are affidavits for search warrants creates for them a curious and irrational exemption from the public access afforded every other document filed with the Court.") And even in cases where courts determine that the common law right of access does not mandate disclosure of warrant materials before an investigation has concluded, the ongoing nature of the investigation is simply a factor to be weighed against the public interest in disclosure and does not, in and of itself, automatically bar disclosure. *See, e.g.*, *United States v. Wells Fargo Bank Account Number 7986104185*, 643 F. Supp. 2d 577, 585 (S.D.N.Y. 2009) (denying full disclosure under common law in light of the "sensitivity of the Government's ongoing investigation and the potential that premature disclosure may thwart further seizures," but ordering that "certain portions of those documents will be unsealed at this time").[3]

---

[3] *But see Times Mirror Co. v. United States*, 873 F.2d 1210, 1219, 1221 (9th Cir. 1989) (holding that common law right of access did not apply to "warrant materials in the midst of a pre-indictment investigation," but reserving judgment on whether common law right of access applies to warrant materials when "an investigation is still ongoing, but an indictment has been

To the extent that the Government opposes disclosure of warrant materials related to the Thompson Investigation because of the private nature of the facts being investigated, the reality is that those facts are now largely out in the open. *See, e.g.*, April 14 Article. The "extent to which information sought was already in the public forum" is one of the factors courts in this Circuit apply in determining whether documents should be disclosed pursuant to the common law right of access. *In re N.Y. Times*, 585 F. Supp. 2d at 88 (citing *Hubbard*, 650 F.2d at 318)). *Cf. In re North*, 16 F.3d 1234, 1240 (D.C. Cir. 1994) (factors to be considered in whether Independent Counsel's report should be released included "whether the subjects of the investigation have already been disclosed to the public" and "whether the filings contain information which is already publicly known"). As in *In re N.Y. Times*, where much of the core information about the Anthrax investigation of Steven Hatfill was already known to the public, the fact that the nature of the Thompson Investigation is now publicly known "weighs in favor of unsealing the warrant materials." 585 F. Supp. 2d at 88. The Post also notes that, to its knowledge, neither Thompson nor any other third party has asserted privacy objections to the unsealing of any of the materials at issue in this case. In any event, such privacy interests can be adequately addressed by redaction of names and identifying information about confidential informants. *See In re N.Y. Times*, 585 F. Supp. 2d at 91.

---

returned"). Of course, to the extent any of the related investigations have concluded in advance of Thompson's sentencing (as is suggested by the Government's filing in the *Thompson* case), clearly such a change in status would affect the balance of factors in favor of a common law right of access and would also trigger the First Amendment right of access already recognized by this Court. *See* Order at 3

### III. THE POST REQUESTS ACCESS TO THE FILINGS AND ORDERS IN THIS CASE, OR, IN THE ALTERNATIVE, A CONFERENCE WITH THE COURT TO ADDRESS HOW TO FACILITATE THE ASSERTION OF THE POST'S INTERESTS

The Post appreciates the prompt action by the Court partially unsealing the records sought by the Post. The Post's interest in the remaining sealed materials continues, however. Because the Post does not know the Government's stated reasons for opposing disclosure of further warrant materials, nor does it know the content of the Government's most recent submissions, and whether any aspect of the Government's position has changed, it cannot adequately respond to the Government's arguments. Although the Post understands why disclosure of the filings in this case must be limited (and, of course, does not object to the Court's *in camera* review of unredacted documents), the Post is nevertheless fundamentally hamstrung in its ability to adequately assert its and the public's interest in access to the materials at issue in this case. As Judge Friedman recently noted, quoting the D.C. Circuit, "[*e*]*x parte* submissions 'generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Chekkouri v. Obama*, No. CV 05-0329 (PLF), 2016 WL 393178, at *1-2 (D.D.C. Feb. 1, 2016) (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995)) (granting motion to compel disclosure of government's *ex parte in camera* submission in Guantanamo prisoner habeas case); *see also Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986) ("It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the appearance and the reality of fairness in the adjudications of United States courts. It is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte, in camera* submissions."). Accordingly, the Post

requests that it be given some limited access to the filings in this case so that it can respond to the potentially evolving positions taken by the Government. In the alternative, the Post requests a conference with the Court to discuss some other form of limited disclosure of the Government's position so that the Post can adequately "meet" the Government's arguments. *Chekkouri*, 2016 WL 393178, at *2.

Dated: June 15, 2016

                Respectfully submitted,

                DAVIS WRIGHT TREMAINE LLP

                By: _____
                    Laura R. Handman
                    Eric J. Feder (admitted *pro hac vice*)

                1919 Pennsylvania Avenue, N.W., Suite 800
                Washington, D.C. 20006
                Tel.: (202) 973-4200
                Fax: (202) 973-4499
                Email: laurahandman@dwt.com
                Email: ericfeder@dwt.com

                *Attorneys for Petitioner WP Company d/b/a The Washington Post*