### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF WP COMPANY LLC d/b/a THE WASHINGTON POST FOR ACCESS TO CERTAIN SEALED COURT RECORDS | Civil Action No. 16-mc-351 (BAH) Chief Judge Beryl A. Howell |

### MEMORANDUM OPINION

The WP Company LLC d/b/a The Washington Post (the "Post") filed this action seeking the unsealing of search warrant materials "relating to" the investigation by the United States Attorney's Office for the District of Columbia ("USAO") into alleged campaign finance violations during the 2010 District of Columbia mayoral election (the "Campaign Finance Investigation"). *See* Mot. Public Access Certain Sealed Ct. Recs. ("Post's Mot."), ECF No. 1. After the Post's motion was granted in part and denied in part, *In re the Application of WP Co.* ("*Wash. Post I*"), No. CV 16-MC-351 (BAH), 2016 WL 1604976 (D.D.C. Apr. 1, 2016), materials filed in connection with eighteen search warrants, issued between February 2012 and January 2015, were unsealed and made publicly accessible with limited redactions. Contending that the government has yet to unseal search warrants filed in furtherance of concededly "ancillary investigations" of Jeffrey E. Thompson, who was prosecuted as part of the Campaign Finance Investigation, the Post now seeks the unsealing of these additional warrant materials. *See* Suppl. Submission Supp. Post's Mot. ("Post's Suppl.") at 2, ECF No. 27.[1] For the reasons set out below, the Post's request for further unsealing in this case is denied.

---

[1] The Post also sought the unsealing of any of the government's *ex parte* filings in this action that have not already been made publicly accessible in redacted form. This part of the Post's request was granted, *see* Min. Orders, dated July 27, 2016 and Aug. 2, 2016, and the Post was provided an opportunity to respond to the redacted versions of the government's memoranda that were made publicly accessible as part of the Court's consideration of the remainder of the Post's present request for additional disclosure.

1

# I.      BACKGROUND

Though styled as a "supplemental memorandum," the Post's latest filing is more easily understood as a new motion to unseal documents that, in the Post's view, "relate to" the Campaign Finance Investigation but were not previously unsealed in response to the Post's original motion in this action.[2]  Indeed, while submitting that it "does not know precisely . . . the current posture" of this action, Post's Suppl. at 1, the Post brought its present request nearly three months after resolution of the Post's original motion, *Wash. Post I*, 2016 WL 1604976, and a week after the case was administratively closed, *see* Min. Entry, dated June 8, 2016. Nonetheless, as explained below, *see infra* Part II.B.1, because the Post now seeks access to materials that were not at issue in the Court's disposition of the Post's original motion, the Post's present request for additional disclosure must be considered on its own merits.  To that end, to determine whether any additional disclosure is warranted under either the First Amendment or the common law, the factual and procedural history preceding the Post's present motion is briefly summarized.

This action began in earnest on February 19, 2016, when the government and Jeffrey E. Thompson jointly moved for a protective order governing the production of materials turned over to Thompson as a part of his prosecution arising out of the Campaign Finance Investigation. *See* Protect. Order Governing Mats. Prod. Def., *United States v. Thompson*, No. 14-cr-49 (CKK) (D.D.C. Feb. 22, 2016), ECF No. 49.  Three days later, the Post initiated this case by moving,

---

[2]      Although the Post's present request is treated as a new motion to unseal, if the Post's characterization were correct and this request focused on the same search warrant materials covered by the original motion, the present request could alternatively be construed as a motion, pursuant to Federal Rule of Civil Procedure 59(e), for reconsideration of the Court's partial denial of the Post's original motion.  Under the stringent standard applicable to such a motion, the Post's present request "need not be granted unless the . . . court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004).  While this heightened standard is not applied here, the Post's present request for additional disclosure is nonetheless denied.

pursuant to Local Rule of Criminal Procedure 57.6, for the unsealing of "court records relating to search warrants issued in connection with" the Campaign Finance Investigation and any "related investigations" of three individuals linked to the alleged campaign finance violations in that investigation.  *See* Post's Mot. at 1.[3]

"Specifically, the Post [sought] access to: the search warrants, applications, supporting affidavits, court orders, and returns relating to the [Campaign Finance Investigation] . . . , whether or not the warrant was issued and/or executed."  *Id.* at 1.  In support, the Post explained that this investigation "concerned issues at the very core of the First Amendment—the integrity of the District of Columbia's elections and its public officials."  *Id.* at 3.  Moreover, asserting a "similarly strong interest in more fully reporting on these matters to the public," *id.* (citing Decl. Laura R. Handman (Feb. 22, 2016), ECF No. 1-3), the Post contended it has a qualified right of access, under both the First Amendment and the common law, to any warrant materials filed in furtherance of the Campaign Finance Investigation.  *See* Mem. Supp. Mot. Public Access Certain Sealed Ct. Recs. ("Post's Mem.") at 10–26, ECF No. 1-2.  On March 24, 2016, the government submitted a sealed, *ex parte* response to the Post's motion, *see* Gov't's Notice of Filing, ECF No. 7, which has since been partially unsealed, *see* Order on Mot. Part. Unseal, ECF No. 21.  As set out in the redacted response, the government did not object to the unsealing of warrant materials tied to the Campaign Finance Investigation with appropriate redactions to protect the privacy interest of individuals named in the documents to be disclosed.  Gov't's Resp. Post's Mot. ("Gov't's Resp.") at 7–9, ECF No. 22.

---

[3]     Local Rule of Criminal Procedure 57.6 directs, *inter alia*, "[a]ny news organization or other interested person" seeking relief "relating to any aspect of the proceedings in a criminal case" to file an application in the Miscellaneous Docket of the Court setting forth "a statement of the applicant's interest in the matter as to which relief is sought, a statement of facts and a specific prayer for relief."

Reviewing these submissions, the Court construed the Post's motion to seek "only warrant materials related to the now-closed Campaign Finance Investigations." *Wash. Post I*, 2016 WL 1604976, at *2 n.2.  Consequently, the Court granted in part and denied in part the Post's motion, and directed the government to file copies of the relevant warrant materials, with redactions to protect: "(1) the identities of uncharged third parties, (2) the identities and personal identifiers of any confidential informants, and (3) any personal identifying or contact information." *Id.* at *3.  Following an *in camera* review, and certain limited additional redactions, the government released redacted versions of more than ninety documents, totaling nearly 1000 pages, for public review on April 15, 2016.  *See* Gov't's Final Redactions, ECF No. 18.

While this action was pending, the sentencing of Thompson in the parallel criminal action was approaching.  In connection with that sentencing, the government, on May 26, 2016, indicated its intention to submit a supplemental filing in the instant case that "may impact the content of the parties' memorand[a] in aid of sentencing and their respective allocutions at the sentencing hearing."  Gov't's Consent Mot. Extend Time File Parties' Mems. Aid Sentencing & Cont. Sent. Hr'g at 3, *United States v. Thompson*, No. 14-cr-49 (CKK), ECF No. 54.  The government has since clarified that certain materials currently under seal describe aspects of Thompson's "substantial assistance that did not result in public charges."  Gov't's Mem. Aid Sent. ("Gov't's Thompson Sent. Mem.") at 16 n.8, *United States v. Thompson*, No. 14-cr-49 (CKK) (D.D.C. July 15, 2016), ECF No. 59.  Specifically, the government explained that "arguably impeaching evidence related to other alleged conduct" had been identified "that potentially could have been used to undermine [Thompson's] credibility as a trial witness." *Id.* at 18.  While choosing not to sponsor Thompson as a trial witness, the government emphasized

that it was "unable to corroborate the most serious allegations related to [Thompson]'s other conduct, [and therefore] declined to pursue criminal charges related to such conduct." *Id.* at 18 n.9.

On June 3, 2016, the government made a supplemental filing, under seal and *ex parte*, in the instant case, which is now publicly available in redacted form. *See* Gov't's Suppl. Resp. Post's Mot. ("Gov't Suppl."), ECF No. 37-1. In this redacted filing, the government explains that it has "completed its final witness interview" and "has declined to proceed with criminal charges against any of the individuals involved" in certain unidentified investigations. *Id.* at 3. Noting both this Court's prior recognition of the important governmental and individual privacy interests potentially harmed by the Post's requested disclosure, as well as Thompson's earlier stated interest in maintaining records related to him under seal, the government explained that it would be "impractical" to protect these interests through targeted redactions. *Id.* at 6.

In response to the government's supplemental filing, the Post filed its present request for additional unsealing on June 15, 2016. *See* Post's Suppl. The Post's supplemental filing cites the newspaper's own recent reporting that, during its investigation of alleged campaign finance violations, the USAO uncovered and investigated allegations concerning unrelated personal conduct involving Thompson. *Id.* at 4–5. Specifically, the Post points to information, based on "confidential and on-the-record sources," that investigators pursued allegations regarding Thompson's sexual relationships, as well as efforts to conceal these relationships from the public. *Id.* According to the Post's reporting, the investigation of this separate personal conduct ultimately influenced the USAO's charging decisions in relation to the Campaign Finance Investigation and, as such, was "plainly critical to the progress and outcome of" that investigation. *Id.* at 5. The Post notes, however, that the search warrant materials unsealed

under the Court's prior orders in this case "did not include any materials related" to any such personal conduct investigations.  *Id.*

With the government's revelation about "impeaching evidence related to other alleged conduct" by Thompson, Gov't's Thompson Sent. Mem. at 18, the Post now clarifies that its original motion sought not only warrant materials issued in connection with the Campaign Finance Investigation, but also any such materials arising from "related" investigations involving three individuals targeted by the USAO.  Post's Suppl. at 7.  The Post acknowledges that it is unaware of "the full scope of these 'related investigations' . . . , or whether those investigations were formally concluded along with the [Campaign Finance Investigation]."  *Id.*  Nonetheless, proceeding on the assumption that additional warrant materials falling within the scope of its motion remain under seal, the Post now asserts the public's right to access any such material. The government responded to the Post's supplemental filing on June 29, 2016, which response has since been made publicly available in redacted form.  *See* Gov't's Resp. Wash. Post's Suppl. Submission Supp. Post's Mot., ECF No. 37-2.

On July 19, 2016, the Court directed the government to provide, under seal, further information regarding its efforts to notify any individuals whose interests may be harmed through the additional disclosure sought by the Post, as well as any compelling interest that may be harmed through such disclosure.  Min. Order, dated July 19, 2016.  In compliance with this Order, the government submitted an additional sealed filing on July 26, 2016.  *See* Gov't's Notice of Filing, ECF No. 32; Gov't's Resp. Court's July 19, 2016 Order (Sealed), ECF No. 36. As with the government's prior *ex parte* submissions, a redacted version of this most recent

response has since been filed on the public docket.  *See* Min. Order, dated Aug. 2, 2016; Gov't's Resp. Court's July 19, 2016 Order, ECF No. 44.[4]

Finally, after initially identifying himself as an "interested party" in this litigation in March 2016, *see* Jeffrey E. Thompson's Consent Mot. Enlargement Time File Opp'n, ECF No. 5, Thompson moved on August 3, 2016, for an order denying the Post's present request for disclosure of additional warrant materials, Mot. Deny Public Access Certain Ct. Recs. ("Thompson Mot."), ECF No. 45.  In addition to "defer[ring] to," but not "adopt[ing] the facts which are alleged in the record of this matter," Thompson explains that, in March 2012, federal agents "executed search warrants in connection with" an unspecified investigation and seized various items that included "more than twenty-three million pages of documents."  *Id.* at 3 (quoting *In re Sealed Case,* 716 F.3d 603 (D.C. Cir. 2013)).  Contending that any public interest in further disclosure "does not override his privacy and property rights," Thompson joins the government in opposing the unsealing of any additional warrant materials in this case.  *Id.*

In light of these filings, the Court allowed the Post to supplement its own prior submissions in support of its request for further unsealing.  Min. Order, dated Aug. 1, 2016.  The Post having done so, Suppl. Submission Supp. Post's Mot. Opp'n Thompson Mot. ("Post's Suppl. Reply"), ECF No. 46, its request for additional disclosure in response to its motion is now ripe for review.

---

[4]     In order for the Court's reasoning to be fully discussed here, portions of the filings cited herein are unsealed, while the full documents remain sealed. *See United States v. Reeves*, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009) (unsealing the defendant's presentence investigation report "to the limited extent referenced in [the] opinion," but maintaining that "the full document shall remain physically withheld from public review") (citing *United States v. Parnell*, 524 F.3d 166, 167 n.1 (2d Cir. 2008) (per curiam)).

## II.     DISCUSSION

The Post asserts two pertinent bases for seeking additional disclosure beyond that provided in response to the Post's initial motion.[5]  First, the Post suggests that the Court misinterpreted the scope of the Post's original motion to encompass only those materials stemming directly from the Campaign Finance Investigation.  Post's Suppl. at 7.  Thus, the Post now reiterates that it seeks "not only [w]arrant [m]aterials 'issued in connection' with the [Campaign Finance Investigation], but also those issued in connection with '*related investigations into Mayor [Vincent] Gray, Jeffrey E. Thompson and Eugenia C. Harris.*'" *Id.* (emphasis in original) (quoting Post's Mot. at 1); *see also* Post's Suppl. Reply at 2 ("[T]he Post renews its request for access to any additional sealed [w]arrant [m]aterials connected to the investigations that the [g]overnment has now confirmed are complete.").

Second, supposing that the government opposes disclosure of any additional warrant materials "because of the private nature of the facts being investigated," the Post argues that "such privacy interests can be adequately addressed by redaction of names and identifying information about confidential informants."  Post's Suppl. at 9 (citing *In re Application of New York Times Co. for Access to Certain Sealed Court Records* ("*In re New York Times*"), 585 F. Supp. 2d 83, 91 (D.D.C. 2008)); Post's Suppl. Reply at 2–3.  Further, the Post argues that "any privacy interests Thompson retains in the sealed materials is diminished by the fact that he has been charged with (and pleaded guilty to) the crimes that were investigated in the" Campaign Finance Investigation.  Post's Suppl. Reply at 3.  For this reason, the Post argues that the public's

---

[5]     While the Post also argues that the public enjoys a constitutional right of access to search warrants during the pendency of an investigation and regardless of whether an investigation has been formally closed, Post's Suppl. at 7–8, this Court need not opine about this particular circumstance since the government has made clear that the unrelated investigations at issue in the Post's supplemental motion are closed, *see* Gov't's Thompson Sent. Mem. at 18; Gov't's Suppl. at 3; Post's Suppl. Reply at 2.

interest in learning additional information regarding individuals targeted in the Campaign Finance Investigation outweighs any remaining interests in continued closure of relevant warrant materials. *Id.* at 3–4.

Following a summary of the legal framework guiding the Court's analysis, these asserted grounds for additional disclosure under either the First Amendment or the common law will be considered in turn.

### A.   APPLICABLE LEGAL PRINCIPLES

"The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment," *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 5 (D.D.C. 2013) (citing *United States v. El-Sayegh*, 131 F.3d 158, 160–61 (D.C. Cir. 1997)), each of which is examined below.

#### 1.   *First Amendment Right of Public Access to Judicial Proceedings*

The First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents. *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 603–04 (1982). Bolstered by the Sixth Amendment's express right for a "public trial" in "all criminal prosecutions," U.S. CONST. amend. VI, public access to criminal trials forms the core of this First Amendment constitutional right, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (explaining that "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted"). A similar right of access has been found to arise wherever "(i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding." *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers*, 448 U.S. at 573); *see also Wash. Post*

*v. Robinson,* 935 F.2d 282, 287–288 (D.C. Cir. 1991).   Under this so-called "'experience and logic' test," *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 934 (D.C. Cir. 2003), "both these questions must be answered affirmatively before a constitutional requirement of access" attaches, *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985).   Applying this standard, the Supreme Court has recognized a First Amendment right of access to criminal trials, *voir dire* proceedings, and preliminary hearings, while the D.C. Circuit has extended such a right to completed—but not unconsummated—plea agreements.  *See Brice*, 649 F.3d at 795–96 (citing authorities).

Even where the First Amendment provides a right of public access, however, this right is "'qualified' and is not absolute."  *In re New York Times*, 585 F. Supp. 2d at 90; *see also Brice*, 649 F.3d at 795.  In particular, the presumption of public access may be overridden upon a showing by the government that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest."  *Brice*, 649 F.3d at 796 (quoting *Wash. Post,* 935 F.2d at 290).  Thus, for example, the D.C. Circuit has held that documents underlying material witness warrants in a prosecution for sexual abuse, which contained "intensely private and painful information about [two juvenile victims'] medical and mental health issues," may be withheld under the First Amendment on the ground that disclosure, even with redaction of the witnesses' names, would "entail a grotesque invasion of the victims' privacy."  *Brice*, 649 F.3d at 795, 797.[6]

---

[6]     The Circuit assumed, without deciding, that the First Amendment guarantees a public right of access to material witness proceedings.  *Brice*, 649 F.3d at 796.

2.      *Common Law Right of Access to Public Records*

In addition to the right of access guaranteed by the First Amendment, the D.C. Circuit has recognized a "broader, but weaker, common law right" of access to public records, including certain "judicial records." *El-Sayegh*, 131 F.3d at 160 (D.C. Cir. 1997) (citing *Wash. Legal Found. v. U.S. Sentencing Comm'n,* 89 F.3d 897, 898 (D.C. Cir. 1996)). Much like the First Amendment analysis described above, "the decision whether a document must be disclosed pursuant to the common law right of access involves a two-step inquiry." *Wash. Legal Found.*, 89 F.3d at 902. First, the court "must decide whether the document sought is a 'public record,'" *id.* (internal quotation mark omitted), with a document's status as a covered "judicial record" dependent on "the role it plays in the adjudicatory process." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (explaining that the common law protects the public's right to inspect and copy "those 'government documents created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived'" (quoting *Wash. Legal Found.*, 89 F.3d at 905)).

Like the First Amendment, however, the common law provides only a qualified right of public access to covered judicial records. Thus, to determine whether a covered judicial record must be disclosed, the court must "balance the government's interest in keeping the document secret against the public's interest in disclosure." *Wash. Legal Found.*, 89 F.3d at 902. While the "starting point" of this analysis is the "strong presumption in favor of public access to judicial proceedings," *EEOC v. Nat'l Children's Ctr., Inc.,* 98 F.3d 1406, 1409 (D.C. Cir. 1996), the D.C. Circuit has identified six factors in determining whether disclosure is compelled under the common law: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure,

and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings," *id.* (citing *United States v. Hubbard,* 650 F.2d 293, 317–22 (D.C. Cir. 1980)).

### B.     THE POST'S REQUEST FOR ADDITIONAL DISCLOSURE IS DENIED

By its nature, the Post's request for access to materials currently under seal addresses sensitive information not previously disclosed to the broader public.  As a result, the parties' submissions necessarily leave some ambiguity as to the precise contours of the parties' arguments for and against additional disclosure in this case.

Nonetheless, based on the portions of these filings that have been made publicly available, the Post's present request centers on search warrants issued in connection with the investigation of Thompson's personal conduct unrelated to the activities at issue in the Campaign Finance Investigation.  For its part, the Post has consistently asserted an interest in public disclosure of warrant materials related to any such investigation on the theory that evidence uncovered elsewhere influenced the course of the Campaign Finance Investigation.  Post's Suppl. at 2; Post's Suppl. Reply at 3–4.  The government has acknowledged both here and in Thompson's sentencing proceedings that it investigated alleged conduct involving Thompson before ultimately declining to pursue any charges against individuals implicated in this separate investigation.  Gov't's Thompson Sent. Mem. at 18 & n.9; Gov't's Suppl. at 3, 6.  Finally, Thompson himself has indicated that investigators executed an unspecified number of search warrants on his property in March 2012.  Thompson Mot. at 3.

Since the Court's prior decision in this case addressed only those warrants that were issued in furtherance of the Campaign Finance Investigation itself, which resulted in public

indictments and successful prosecutions of a number of individuals, the Court did not have

occasion to consider whether public access to such materials stemming from any separate

investigations into unrelated, uncharged personal conduct is guaranteed under either the First

Amendment or the common law.  With this issue now squarely before the Court, the Post's

asserted bases for additional disclosure in this case are now each considered in turn.

### 1. *Warrants Issued in Connection with Separate Investigations Fall Outside the Scope of the Court's Initial Order*

In seeking additional disclosure, the Post does not suggest that the government has failed

to disclose warrant materials issued in connection with the Campaign Finance Investigation *per

se*.  Instead, the Post seeks disclosure of warrant materials issued in separate investigations

involving Thompson that it considers "*related to*" the Campaign Finance Investigation.  Post's

Suppl. at 6–7 (emphasis added).  As noted, the government has acknowledged the existence of

"arguably impeaching evidence related to other alleged conduct . . . that potentially could have

been used to undermine [Thompson's] credibility as a trial witness."  Gov't's Thompson Sent.

Mem. at 18.  Positing that this evidence was "plainly critical to the progress and outcome of the"

Campaign Finance Investigation, the Post argues that the public maintains a manifest interest in

disclosure of the details of any separate investigations involving Thompson.  Post's Suppl. at 5.

Thus, the Post asserts an interest in examining the details of any separate investigation to better

understand and assess the USAO's decision-making in the Campaign Finance Investigation.  *Id.*

at 7.

To a degree, the Post's contention that evidence uncovered through other investigations

involving Thompson influenced the course and outcome of the Campaign Finance Investigation

finds some support in the government's public filings.  Indeed, the government has

acknowledged publicly that it uncovered evidence related to alleged conduct unrelated to the

13

political activities at issue in the Campaign Finance Investigation that the government viewed as affecting Thompson's credibility as a trial witness.  Gov't's Thompson Sent. Mem. at 18.  At the same time, however, the government has indicated that Thompson provided substantial assistance to authorities in numerous successful prosecutions arising from the Campaign Finance Investigation.  *Id.* at 16–17.  In any event, even assuming that evidence obtained through separate investigations influenced the ultimate resolution of the Campaign Finance Investigation, the Post's suggestion that the public thus maintains an equivalent interest in the details of these unrelated investigations is unpersuasive.

In describing the public's interest in the Campaign Finance Investigation, the Post explained that its requested disclosure "will help shed significant light on a lengthy series of highly public investigations that had significant, direct impact on D.C. politics, and will provide the public with valuable insight into how the USAO carried out its responsibilities to investigate these critical issues."  Post's Mem. at 9.  In so doing, the Post emphasized that the Campaign Finance Investigation "implicated the highest levels of government in the city" and "concerned issues at the very core of the First Amendment—the integrity of the city's elections and its public officials."  *Id.* at 2, 22.  Recognizing these important considerations, as well as the limited interest in continued closure given the public prosecutions concluding that long-term investigation, the government conceded that "maintaining blanket secrecy on the specific records sought from the Campaign Finance Investigation is not necessary."  *Wash. Post I*, 2016 WL 1604976, at *2.

By contrast, the materials the Post now seeks to unseal stem not from the public investigation and prosecution of prominent local elected officials and mayoral candidates, but from undisclosed and uncharged allegations levied against private citizens.  While the Post

would portray these unrelated allegations as inexorably linked to the Campaign Finance Investigation, *see* Post's Suppl. at 7, any such link is essentially incidental.  Indeed, the disclosure the Post seeks would provide, at best, limited additional information regarding the course and resolution of the Campaign Finance Investigation.  At the same time, as discussed below, *infra* Parts II.B.2.b, II.B.2.c, the Post's present request implicates important individual and law enforcement interests not previously at issue in this case.  For this reason, to determine whether any additional unsealing is warranted, the Court must consider whether the disclosure the Post now seeks is guaranteed under either the Constitution or the common law.

### 2.     *No Further Disclosure is Warranted under the First Amendment*

In disposing of the Post's initial motion, the Court held that the First Amendment protects public access to warrant materials associated with searches conducted during the course of the now-closed Campaign Finance Investigation.  *Wash. Post I*, 2016 WL 1604976, at *2. With the Post now seeking disclosure of similar materials stemming from any other, unrelated investigations, the Court must now consider whether the additional disclosure the Post seeks is similarly warranted.  As explained below, in contrast to the materials previously unsealed in this case, the warrant materials remaining under seal implicate compelling individual and law enforcement interests that outweigh any public interest in further disclosure.

### a)     *Prior Ruling Regarding Campaign Finance Investigation Material*

With limited binding precedent on this issue, the Court's prior consideration of the Post's asserted right of access to post-investigation search warrant materials drew largely on the thorough reasoning set out by former Chief Judge Royce Lamberth in *In re Application of New York Times Co. for Access to Certain Sealed Court Records* ("*In re New York Times*"), 585 F. Supp. 2d 83 (D.D.C. 2008).  As here, the *In re New York Times* Court considered the request by

a national newspaper to unseal search warrant materials arising out of a high-profile criminal investigation in the District of Columbia.  *Id.* at 86–87.  Specifically, the New York Times (the "Times") sought access, under both the First Amendment and the common law, to warrant materials related to the search of property owned by an individual identified as a "person of interest" in the criminal investigation of the mailing of anthrax to members of Congress and the media soon after the September 11, 2001 terrorist attacks.  *Id.*  While this individual was eventually cleared of any wrongdoing, the search of his property was widely known after it "was covered as a live media event with helicopter footage of the search in progress."  *Id.*  Such was the public's interest in the matter that, even after the suicide of the government's sole suspect in the case and the government's decision to formally close the investigation, the Times sought access to various warrants that had not been disclosed to the public.  *Id.*

Applying the "experience and logic" test described above, the *In re New York Times* Court held that the First Amendment provides a right of public access to post-investigation warrant materials.  *See id.* at 88–90.  In reaching this conclusion, the court observed that "post-investigation warrant materials . . . have historically been available to the public," and that "warrant applications and receipts are routinely filed with the clerk of court without seal."  *Id.* at 88 (citing FED. R. CRIM. P. 41(i), among other authorities).  Further, the court emphasized that public access to such materials plays a "significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage," with disclosure serving "as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police."  *Id.* at 90 (citing authorities).

Reviewing this non-binding authority, this Court agreed that the First Amendment provides a qualified right of access to warrants issued in connection with the closed Campaign

Finance Investigation. *Wash. Post I*, 2016 WL 1604976, at \*2. Having concluded that a constitutional right of access attached to these materials, the Court further considered whether a compelling interest necessarily would be harmed by their disclosure. *Id.* Observing that the Campaign Finance Investigation is "now closed, and the prosecutions arising from this investigation widely known," the Court found no compelling privacy, reputational or law enforcement interest would be adversely affected by the requested disclosure, since any remaining privacy interests could be sufficiently protected through appropriate redactions. *Id.*[7]

The Post would now extend this prior holding to allow for public access to all warrants issued in connection with any now-closed investigations involving Thompson and others that are "related" to the Campaign Finance Investigation. In the Post's view, "under this Court's prior orders in this case, the Post and the public have a qualified right under the First Amendment to access court records associated with searches in furtherance of [these] now closed investigations." Post's Suppl. Reply at 2. As explained below, however, this attempt to generalize the Court's narrow holding in resolving the Post's original motion overlooks important individual and law enforcement interests that distinguish the Post's present request from the disclosure already granted in this case.

    b)    *Compelling Individual Interests*

The Post's present effort to obtain access to warrants issued in previously undisclosed investigations involving Thompson and others directly impacts three distinct, yet overlapping individual interests. First, the mere association with alleged criminal activity as the subject or target of a criminal investigation carries a stigma that implicates an individual's reputational interest. Second, the substance of the allegations of criminal conduct may reveal details about

---

[7]    Indeed, the government conceded that full sealing of the warrants underlying that investigation was no longer warranted. *Wash. Post I*, 2016 WL 1604976, at \*2 (citing Govt.'s Resp. at 7).

otherwise private activities that significantly implicate an individual's privacy interests, particularly when those allegations touch on intimate or otherwise salacious details of private affairs.  Finally, where, as here, a criminal investigation does not result in an indictment or other prosecution, a due process interest arises from an individual being accused of a crime without being provided a forum in which to refute the government's accusations.

Recognizing these compelling interests, the public's First Amendment right of access does not automatically attach to search warrants issued in any closed criminal investigations. Most notably, contrary to the Post's broad conception of its right to review post-investigation warrant materials in this case, courts have been reluctant to recognize even a qualified public right to access to such materials where, as here, an investigation concludes without indictment. *See, e.g.*, *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, California, in Account No. 7986104185, Held in the Name of Account Servs. Inc., & All Prop. Traceable Thereto*, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) (explaining that, where the only proceedings "bearing any connection" to sealed warrant materials were the "application proceedings in connection with which the warrants were issued," the "'experience' prong of the experience and logic test does not support" a First Amendment right of access).  Indeed, without an indictment, even a "closed" investigation is more analogous to a federal grand jury proceeding, to which no public right of access attaches, than the sort of public criminal proceeding that lies at the core of the First Amendment.

Unlike criminal trials, grand jury proceedings are presumptively secret.  Given the potential for evidence presented to a grand jury to cause serious harm to a person's privacy and due process interests, the Federal Rules of Criminal Procedure ensure that such proceedings remain closed.  Rule 6(e) strictly prohibits public disclosure of any "matter[s] occurring before

[a] grand jury," FED. R. CRIM. P. 6(e)(2), with similar protections afforded to "[r]ecords, orders, and subpoenas relating to grand-jury proceedings," FED. R. CRIM. P. 6(e)(6).  Thus, even where an investigation has concluded, grand jury proceedings generally remain secret in order to "ensure that 'persons who are accused but exonerated by the grand jury will not be held up to public ridicule.'"  *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (quoting *Douglas Oil Co. v. Petrol Stops Nw.,* 441 U.S. 211, 219 (1979)).  Recognizing the important individual interests protected by grand jury secrecy, the Circuit has held that, "[a]lthough public access plays an important role in other aspects of the judicial process, 'there is no First Amendment right of access to grand jury proceedings,' nor do First Amendment protections extend to ancillary materials dealing with grand jury matters."  *Id.* (quoting *In re Motions of Dow Jones & Co.,* 142 F.3d 496, 499, 502 (D.C. Cir. 1998)).

Much the same, the compelling interests protected by grand jury secrecy are apparent in other settings in which disclosure is sought of materials regarding a criminal investigation and the individuals involved, where the investigation did not result in a successful prosecution.  For example, in the context of litigation over the proper scope of disclosure under the Freedom of Information Act, 5 U.S.C. § 552, the D.C. Circuit has identified the individual "privacy interests at stake" for persons subject to criminal investigations, including "avoiding the stigma of having [the subject's] name associated with a criminal investigation" and "keeping secret the fact that they were subjects of a law enforcement investigation," as well as "a second, distinct privacy interest in the contents of the investigative files."  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091–92 (D.C. Cir. 2014) (emphasis omitted).  These substantial privacy and reputational interests extend to the target or subject of the criminal investigation as well as to third parties who may be mentioned or somehow involved in the

investigation.  *Id*. at 1092 n.3; *see also Hodge v. FBI*, 703 F.3d 575, 580–81 (D.C. Cir. 2013)

("[W]e have recognized that private citizens—such as witnesses, informants, and suspects—have

particularly strong privacy interests."); *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984)

("[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal

activity."); *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv*., 656 F.2d 856, 864

(D.C. Cir. 1981) ("There can be no clearer example of an unwarranted invasion of personal

privacy than to release to the public that another individual was the subject of an FBI

investigation." (quoting *Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980))).

The D.C. Circuit has clearly expressed its view that "defendants whose prosecutions ended in

acquittal or dismissal have a much stronger privacy interest in controlling information

concerning those prosecutions than defendants who were ultimately convicted," noting that

"[t]he presumption of innocence stands as one of the most fundamental principles of our system

of criminal justice: defendants are considered innocent unless and until the prosecution proves

their guilt beyond a reasonable doubt." *ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 933 (D.C.

Cir. 2014).

Moreover, as a general matter, "[t]he Due Process Clause of the Fifth Amendment

protects an individual from governmental accusations of criminal misconduct without providing

a proper forum for vindication." *Doe v. Hammond*, 502 F. Supp. 2d 94, 101 (D.D.C. 2007)

(citing authorities).  While this protection has been recognized most often in the context of

individuals named as unindicted co-conspirators in an indictment, this protection "extends to

other criminal accusations made by a government attorney, including accusations in factual

proffers and other court memoranda." *Id.* at 102 (recognizing this broader interest, but

explaining that exclusion from the immunity provision of a criminal plea agreement does not

constitute an accusation (citing *United States v. Crompton Corp.*, 399 F. Supp. 2d 1047, 1049 (N.D. Cal. 2005))); *see also In re Interested Party 1*, 530 F. Supp. 2d 136, 144 (D.D.C. 2008) (same); *United States v. Korean Air Lines Co.*, 505 F. Supp. 2d 91, 96 (D.D.C. 2007) (same).

Federal prosecutors are entrusted with broad authority to compel production of information and formally accuse an individual of criminal wrongdoing.  Mindful of the attendant risks associated with the misapplication—whether intentional or inadvertent—of this powerful authority, courts have consistently warned against "the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing," particularly where individuals lack the opportunity "to clear their names at trial."  *United States v. Smith*, 985 F. Supp. 2d 506, 526 (S.D.N.Y. 2013); *see also Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corp. v. Pulitzer Pub. Co.*, 895 F.2d 460, 467 (8th Cir. 1990) ("Disclosure [of search warrant materials, which included descriptions of intercepted communications involving unindicted individuals,] would place those individuals in essentially the same precarious position as unindicted co-conspirators."); *United States v. Smith*, 776 F.2d 1104, 1113–14 (3d Cir. 1985) (explaining that inclusion, in a bill of particulars, of names of unindicted individuals who prosecutors contended "*could conceivably be considered as unindicted co-conspirators*" constituted a "predictable injur[y] to the reputations of the named individuals [that was] likely to be irreparable"); *In re Smith*, 656 F.2d 1101, 1106 (5th Cir. 1981) (explaining that "no legitimate governmental interests could be served by stigmatizing private citizens as criminals while not naming them as defendants" (citing *United States v. Briggs*, 514 F.2d 794, 805, 802 & n.13 (5th Cir. 1975))).  *But see United States v. Kott*, 380 F. Supp. 2d 1122, 1125 (C.D. Cal. 2004), *aff'd*, 135 F. App'x 69 (9th Cir. 2005) (finding the "danger of unfounded character assassination in [the search warrant] context [in]sufficient to constitute a

compelling governmental interest in maintaining the secrecy of the [warrant materials]"). Echoing these consistent admonitions from the courts, the United States Attorneys' Manual pointedly notes that "there is ordinarily no legitimate governmental interest served by the government[]" leveling a public allegation of wrongdoing against an uncharged party, and "this is true regardless of what criminal charges may be contemplated by the Assistant United States Attorney against the third-party for the future." USAM § 9–27.760 (internal quotation marks and citation omitted).

Indeed, the recognition of these compelling individual interests animates the requirement that prosecutors bring allegations of wrongdoing exclusively through the criminal justice system, where these interests are protected by means of grand jury secrecy and other constitutional safeguards. For this reason, the possibility of improper disclosure is particularly troubling where a law-enforcement investigation is closed without even the submission of evidence to a grand jury.[8] As the Eight Circuit has explained:

> [W]here no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that, whatever their truth, the Government cannot prove these allegations. The court of public opinion is not the place to seek to prove them. If the Government has such proof, it should be submitted to a grand jury, an institution developed to protect all citizens from unfounded charges. All citizens, whatever their real or imagined past history, are entitled to the protection of a grand jury proceeding.

*Certain Interested Individuals*, 895 F.2d at 466–67; *see also Smith*, 985 F. Supp. 2d at 526 (same, quoting *Certain Interested Individuals*). In this sense, disclosure of investigatory materials that have not been submitted to a grand jury or otherwise resulted in public criminal

---

[8]     Although the parties' submissions on this point are less than clear, Thompson's citation to *In re Sealed Case*, 716 F.3d 603 (D.C. Cir. 2013) in describing the warrants at issue here, *see* Thompson Mot. at 3–4, suggests that certain evidence obtained through these warrants was submitted to one or more grand juries. While heavily redacted, the D.C. Circuit's decision in that case makes clear that the warrants under consideration there were "executed . . . as part of a grand jury investigation." *In re Sealed Case*, 716 F.3d at 604.

charges potentially deprives accused individuals of even the most basic protections of our criminal justice system and risks irreparably damaging the reputations and privacy of presumptively innocent citizens. *See ACLU*, 750 F.3d at 934–935 ("[D]efendants [who] have been acquitted or had the relevant charges dismissed . . . have a significant and justified interest in avoiding additional and unnecessary publicity. For example, someone who had been acquitted of accounting fraud after a full and fair trial, moved on with his life, and started a family might be especially dismayed were his neighbors, friends, and family to learn about his previous prosecution due to the publicity associated with the release of the requested information.").

In this light, the Post's present request is distinguishable from its original request in a number of important respects. First, as the Post emphasizes, the USAO conducted the Campaign Finance Investigation largely in public view, with prosecutors openly announcing their intention to investigate allegations of illegal fundraising tied to the 2010 mayoral campaign in early 2011. Post's Mem. at 4. As a result, many of the allegations levied against the public officials targeted by investigators were widely known even before these individuals were indicted, with some of the physical searches giving rise to the sought-after warrants in this case widely reported in the media. *Id.* In fact, the Post itself notes that the then-U.S. Attorney for the District of Columbia publicly discussed the impact of the ongoing investigation on the then-Mayor's reelection campaign in the spring of 2014. *Id.* at 5. In this way, the Campaign Finance Investigation giving rise to the released warrant materials closely resembled the investigation at issue in *In re New York Times*. In both cases, unsealed warrant materials stemmed from a publicly acknowledged investigation of widely known allegations of misconduct, significantly minimizing the risk that the requested disclosure would raise new privacy and reputational concerns.

By contrast, the Post now seeks access to materials arising from investigations that have not been publicly discussed and involve presumptively innocent conduct bearing no relationship to the wrongdoing at issue in the Campaign Finance Investigation.  Exposure of previously unacknowledged allegations, which resulted in no criminal charges, thus more readily raises the significant possibility of "stigmatizing private citizens as criminals while not naming them as defendants."  *In re Smith*, 656 F.2d at 1106.  As such, the Post's contention that these separate investigations influenced the course and outcome of the Campaign Finance Investigation, Post's Suppl. at 4–5, is of no moment.  The mere fact that these separate investigations coincided with the Campaign Finance Investigation, and may even have affected the course and resolution of that investigation, has no bearing on the reputational and due process interests at stake in the requested disclosure.  *Accord Times Mirror Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989) (denying access to search warrant materials while an investigation is ongoing and explaining that "persons named in [search] warrant papers will have no forum in which to exonerate themselves if the warrant materials are made public before indictments are returned").

Second, compelling personal privacy interests implicated by the Post's present request militate strongly against additional disclosure in this case.  Importantly, the Post's present request is not limited to the unsealing of information confirming that searches were conducted during the course of the separate Thompson investigation.  Instead, the Post seeks access to "applications, supporting affidavits, court orders, and returns" associated with any such warrants.  Post's Mot. at 1.  While a warrant itself conveys relatively few details regarding an alleged crime, these supporting materials include detailed information regarding the government's basis

for concluding that a crime has been committed and that evidence of that crime will be discovered in a specified location.[9]

As the government notes, the Post has reported that "prosecutors also conducted interviews about money and gifts Thompson gave young men, and about whether he did so to hide sexual relationships."  Gov't Resp. Court's July 19, 2016 Order at 11 n.5 (quoting Ann E. Marimow, Case Against Ex-D.C. Mayor Gray Stalled over Claims Key Witness Had Credibility Issue, WASH. POST (Apr. 14, 2016), https://www.washingtonpost.com/local/public-safety/case-against-ex-dc-mayor-gray-stalled-over-claims-key-witness-had-credibility-issue/2016/04/14/1f20553e-018f-11e6-9203-7b8670959b88_story.html).  Assuming this report to be accurate, the D.C. Circuit and the Supreme Court have long recognized the compelling individual privacy interest in maintaining as secret such sensitive personal information.  *See Press-Enter. Co. v. Superior Court of California*, 464 U.S. 501, 511 (1984) (recognizing as a "compelling interest" maintaining as private "deeply personal matters that [a] person has legitimate reasons for keeping out of the public domain"); *Hubbard*, 650 F.2d at 324 (recognizing the "[v]alid privacy interest[] . . . in documents which reveal the intimate details of individual lives, sexual or otherwise, whether or not they concern innocent third parties" (internal quotation marks and footnote omitted)).

The Post relies on non-binding, out-of-circuit authority to contend that "general 'privacy and reputational concerns typically don't provide sufficient reason to overcome a qualified First Amendment right of access,'" Post's Suppl. Reply at 3 (quoting *United States v. Loughner*, 769

---

[9]      For example, compare the earliest-issued warrant already released in this case, Search and Seizure Warrant, *USA v. Dell Laptop Computer [Redacted] and Blackberry Bold 9700 [Redacted]*, 12-mj-179 (Feb. 28, 2012), ECF No. 6-6, with the affidavit supporting the government's application for that warrant, Gov't Aff. Supp. App. Under Rule 41 for Warrant Search and Seize, *USA v. Dell Laptop Computer [Redacted] and Blackberry Bold 9700 [Redacted]*, 12-mj-179 (Feb. 28, 2012), ECF No. 6-2.

F. Supp. 2d 1188, 1196 (D. Ariz. 2011)); *see also In re New York Times*, 585 F. Supp. 2d at 93 n.14 ("[C]ourts that have identified legally cognizable privacy interests have done so with more specificity than a blanket statement that one has a right to get on with his life."). Here, however, the disclosure envisioned by the Post highlights specific reputational and privacy interests. In fact, far from contesting the government's characterization of these materials, the Post itself asserts that the materials remaining under seal likely would address intimate personal details regarding Thompson's sexual preferences and partners. Post's Suppl. at 4–5. Moreover, the Post's reporting suggests that Thompson actively sought to ensure that this information remained private. *Id.*

In addition to Thompson, as instructed by the Court, the USAO took steps to "notify any individuals whose privacy interests may be implicated through the additional disclosure" requested by the Post. Min. Order, dated July 19, 2016. In response, the government represents that it has notified individuals potentially affected by the Post's present request in order to explain the content of the Post's request and provide context as to the interests at stake. Gov't's Resp. Court's July 19, 2016 Order (Sealed) at 5–6. Unsurprisingly, those individuals contacted by the USAO echoed the concerns raised by the government in contesting the Post's motion and joined the government in opposing any further unsealing in this case. *Id.*

In sum, absent prior public disclosure of the details of these separate investigations, revelation of presumptively innocent conduct would constitute a serious invasion of the personal privacy of any individuals identified in any such materials, as well as their reputational and due process interests. *Accord Brice*, 649 F.3d at 797 (holding that revealing "private and painful" information regarding then-juvenile victims' physical and mental health could constitute a "grotesque invasion of the victims' privacy").

c)      *Compelling Law Enforcement Interests*

Finally, beyond these important individual privacy, reputational, and due process interests, compelling law enforcement interests likewise weigh against disclosure of search warrant materials not yet made public in this case.

Specifically, as explained above, *supra* Part I, Thompson provided substantial assistance to prosecutors in the Campaign Finance Investigation, including assisting in the investigation and prosecution of eight other targets of that investigation. Gov't's Thompson Sent. Mem. at 16–18. For obvious reasons, ensuring that investigators are able obtain information and assistance from individuals with direct knowledge of criminal conduct is critical to law enforcement efforts and the government's compelling interest in protecting the public. Such is the significance of this interest that, where an informant has not already been identified, the government is generally permitted "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Smith v. Lanier*, 726 F.3d 166, 167 (D.C. Cir. 2013) (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957)); *see also Roviaro*, 353 U.S. at 59 (noting this interest in preserving witness anonymity "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation"). While Thompson's identity and assistance to the USAO has now been publicly acknowledged, the government's interest in preserving its ability to work with witnesses to obtain information regarding suspected crimes is directly implicated by the Post's request for additional disclosure in this case. Indeed, much as anonymity serves to ensure potential witnesses are free to provide information without fear of reprisal, preserving as secret intimate

details of an individual's personal life and conduct helps to ensure that witnesses are willing to step forward to assist important criminal investigations.

The Post's present request, however, turns this basic intuition on its head.  In the Post's view, it is precisely *because* an individual may serve as a witness against a high-profile defendant that the public maintains an interest in other, unrelated investigations that may have a bearing on that witness's credibility.  The Court recognizes the significant public interest generated by the Post's reporting in this case, which the Post correctly notes touches on matters of significant public concern.  Nonetheless, the notion that, by assisting investigators and agreeing to serving as a potential witness in a high-profile criminal investigation, an individual's intimate life and unrelated personal conduct become fodder for public inspection is simply inconsistent with the government's recognized interest in preserving its ability to work with the public to root out criminal behavior.

d)      *Redactions Would Not Sufficiently Protect Compelling Interests*

Finally, due to the degree of media scrutiny already garnered by the instant action, the government asserts that "the public will be able to easily determine the names and identities of the persons referenced in the requested documents," and that even "limited redactions would invite conjecture and speculation about the involvement by the affected persons or others in the allegations discussed in the requested materials."  Gov't Resp. Court's July 19, 2016 Order (Sealed) at 13, 15.  As a result, the Court concludes redaction of the requested materials is insufficient to protect adequately the compelling privacy, reputational, and due process interests identified by the government and Thompson, and, consequently, full closure of the sealed warrant materials sought by the Post is the least restrictive means of protecting these compelling interests.

28

*          *          *

In short, the Post's effort to obtain additional disclosure by means of its acknowledged right of access to search warrants issued under the Campaign Finance Investigation amounts to little more than bootstrapping.  Even assuming the public maintains a First Amendment right to search warrants issued in closed, non-public investigations, the Post's submissions in support of its request for further disclosure readily demonstrate that any additional unsealing likely would significantly infringe upon the personal due process, reputational, and privacy interests of individuals implicated in those materials and would likewise raise the substantial probability of harming important law enforcement interests.

Accordingly, the Post's request, pursuant to the First Amendment, to unseal any post-investigation warrant materials not previously disclosed is denied.  *Accord* Redacted Mem. Op., *United States v. Thompson*, No. 14-cr-49 (CKK), ECF No. 66 (concluding that, while the First Amendment provides a qualified right of access to sentencing materials, the government has demonstrated a compelling interest in sealing materials, like the warrant materials at issue here, "outlining areas of [Thompson's] substantial assistance that did not result in public charges").

### 3.     *No Further Disclosure is Warranted under the Common Law*

Having concluded that the First Amendment compels no additional disclosure in response to the Post's motion, the Court turns next to the Post's suggestion that the unsealing of search warrant materials it seeks is guaranteed under the weaker common law right of access to judicial records.  As before, while a common law right of access attaches to the post-investigation warrant materials the Post seeks, the compelling privacy, reputational, due process, and law enforcement interests identified above easily offset any limited public interest in additional disclosure in this case.

29

The D.C. Circuit has not addressed the degree to which the common law provides a qualified right of access to search warrant materials either before or after an investigation has concluded.  A number of other Circuits, however, have recognized such a right, subject to the weighing of interests described above, to warrant materials after an investigation has concluded. *See United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.* ("*Custer Battlefield Museum*"), 658 F.3d 1188, 1192 (9th Cir. 2011) (citing authorities from the Second, Fourth, Seventh, and Eighth Circuits).  Upon consideration of these authorities, the Court agrees that "[a]ffidavits in support of seizure or search warrants are central to a court's probable cause determination," and, therefore, "clearly fall within the definition of 'judicial documents.'"  *Id.* at 1193 (internal quotation marks omitted) (quoting *All Funds on Deposit at Wells Fargo*, 643 F. Supp. 2d at 583).  Thus, at least where an investigation has concluded, a common law right of public access generally attaches to such materials.[10] Nonetheless, for the reasons articulated above, compelling privacy and due process interests of persons who have not been charged outweigh any limited public interest in further disclosure in this case.

Here, all but one of the factors identified by the D.C. Circuit in considering the public's common law right of access to judicial records point strongly in favor of continued sealing of warrant materials in this case.  Most significantly, as previously noted, *supra* Part II.B.2.b, the Post itself asserts that the materials it seeks to unseal touch upon highly intimate personal details,

---

[10]      For its part, the Post relies on non-binding authority in this Circuit to contend that "the status of the investigation is simply one factor to be weighed in the court's discretionary determination whether the common law right of access mandates disclosure of particular records."  Post's Suppl. at 8 (citing *In re New York Times*, 585 F. Supp. 2d at 92–93).  Other courts, however, have categorically barred access under the common law to "warrant materials in the midst of a pre-indictment investigation," on the ground that such records "traditionally [have] been kept secret for important policy reasons."  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Times Mirror Co.*, 873 F.2d at 1219).  In any event, as previously explained, *supra* n.5, because the unrelated investigations at issue here are closed, the Court need not consider whether a common law right of access attaches to warrant materials in *ongoing* criminal investigations.

including sexual preferences and relationships that are not known to the public.  In the context of

the common law right of access, the D.C. Circuit and others have long recognized the "[v]alid

privacy interest[] . . . in documents which reveal the intimate details of individuals lives, sexual

or others, whether or not they concern innocent third parties."  *See Hubbard*, 650 F.2d at 324

(internal quotation marks and footnote omitted); *see also Application of Newsday, Inc.*, 895 F.2d

74, 79 (2d Cir. 1990) ("[T]he common law right of access is qualified by recognition of the

privacy rights of the persons whose intimate relations may thereby be disclosed . . . .").  Beyond

this significant privacy interest, the individual due process, reputational, and law enforcement

concerns described above, *supra* Parts II.B.2.b, II.B.2.c, further counsel against additional

disclosure in this case.  Given the public's limited access to the information contained in the

sought-after materials, further disclosure would tangibly harm these interests.  Apparently

recognizing this risk, both the government itself and each of the individuals whose interests may

be impaired oppose further unsealing in this case.  Gov't Resp. Court's July 19, 2016 Order

(Sealed) at 5–6; *see supra* Part II.B.2.b.

      Relying on *In re New York Times*, as well as its own reporting, the Post contends that the

private details it believes would be revealed in the sealed materials "are now largely out in the

open," Post's Suppl. at 9, thus mitigating any further harm through additional disclosure.  As

previously discussed, however, *see supra* Part II.B.2.b, the present case is readily distinguishable

from *In re New York Times* in that none of the investigative information giving rise to the sealed

materials at issue here has been publicly acknowledged by the USAO.  Apparently conceding

this important distinction, the Post relies on informal "conversations with . . . confidential and

on-the-record sources" to suggest that the information it has reported is now widely

acknowledged.  Post's Suppl. at 4.

Setting aside the troubling suggestion that unauthorized disclosures from law enforcement agents or the USAO have the effect of extinguishing the privacy, reputational, and due process interests of uncharged third parties, the fact remains that the documents the Post seeks are not publicly available and the Post's reporting to date offers scant information regarding their supposed contents.  For this reason, the additional disclosure the Post seeks is highly likely to significantly infringe on the compelling interests identified above.

Weighed against these important individual privacy, reputational, and due process interests and law enforcement interests, the Post's asserted need for public access to the sought-after materials falls well short of meriting further disclosure in this case.  Indeed, as noted above, *supra* Part II.B.1, the public interest in evidence of conduct unrelated to the campaign activities underlying the Campaign Finance Investigation is highly attenuated from the core public interests identified by the Post in its initial motion.  The conduct described by the Post bears no direct relationship to matters of public trust or the integrity of the District's elections.  Instead, the public's interest in disclosure stems from a tangential interest in learning more about the broader context of the USAO's Campaign Finance Investigation.  While the public's interest in holding its elected officials accountable is indeed strong, this secondary interest in gleaning additional information regarding the credibility of potential witnesses in high-profile criminal prosecutions is simply insufficient to overcome the compelling interests described above.

Consequently, no further unsealing is warranted under the common law in response to the Post's present motion.  *Accord* Redacted Mem. Op., *United States v. Thompson*, No. 14-cr-49 (CKK), ECF No. 66 (holding that the government "advanced several strong and compelling interests that outweigh the common law qualified right of access" to sentencing materials, like

the warrant materials at issue here, "outlining areas of [Thompson's] substantial assistance that did not result in public charges").

## III.    CONCLUSION

In denying the Post's request for additional unsealing in this case, the Court is mindful that today's result may be met with some disappointment by the Post and even the USAO. Though motivated by different incentives, both these parties have interests in disclosure. Specifically, a full airing of the information available to the USAO in connection with the Campaign Finance Investigation likely would serve not only to sate the public's desire for additional insight into an investigation that continues to hold some mystery, but would also help explain and perhaps vindicate USAO decisions that have come under intense public scrutiny. Indeed, it is easy to imagine circumstances in which law enforcement agents or prosecutors facing evidentiary or legal issues that frustrate their ability to bring formal criminal charges opt to disregard important individual and even law enforcement interests in order to preserve their own personal professional reputations.  The government properly resisted that temptation in this case.  As the D.C. Circuit has pointed out in a different context, "the government, having brought the full force of its prosecutorial power to bear against individuals it ultimately failed to prove actually committed crimes, has a special responsibility—a responsibility it is fulfilling here—to protect such individuals from further public scrutiny." *ACLU*, 750 F.3d at 935.

In the end, "[t]he job of protecting [individual privacy and reputational] interests rests heavily upon the shoulders of the trial judge, since all the parties who may be harmed by disclosure are typically not before the court." *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also ACLU*, 750 F.3d at 935 (observing that "[s]uch balancing decisions," involving weighing the "substantial privacy interest at stake" for "defendants who were acquitted

or had their cases dismissed . . . against the public interest in disclosure . . . [,] generally speaking, are among the most challenging sorts of cases that judges face").  Here, in light of the compelling individual and law enforcement interests described above, no further disclosure is warranted in this case under either the First Amendment or the public's common law right of access to judicial materials.  Even assuming the records the Post seeks are not categorically excluded from disclosure, any value in exposing additional details of separate investigations conducted by the USAO into unrelated conduct of individuals targeted in the Campaign Finance Investigation is easily outweighed by compelling privacy, reputational, due process, and law enforcement interests in continued sealing of these materials.  For this reason, the Post's request for additional unsealing in this case is denied.

Date: August 18, 2016

_____
BERYL A. HOWELL
Chief Judge